[Civ. No. 5773.  Third Appellate District.—March 16, 1937.]

EDWARD R. RICHTER, Appellant, v. HUGH ADAMS
et al., Respondents.

Frederick E. Hoar, Swaffield & Swaffield, Kenneth Sperry and Joseph E. Madden for Appellant.

Louis L. Swarthe and Claflin & Dorsey for Respondents.

PULLEN, P. J.—This is an appeal from a judgment in favor of the defendants in an action to terminate the defendants' interest in a certain oil and gas lease for failure to make payments of royalties as provided in the written agreement whereby the defendants contracted with the plaintiff for purchase of the lease in question.

The action was to recover possession of the leasehold premises, and incidental thereto to recover the value of oil produced and saved therefrom subsequent to the filing of the action. In this connection, Golden Bear Oil Company, Ltd., is joined as a party defendant, that company having purchased certain oil products from the leased premises, with knowledge of the filing of this action and of plaintiff's claim to ownership of the oil in question.

On February 20, 1933, plaintiff, as lessee, secured from Mrs. Lizzie Glide, as lessor, the lease of the lands here in question and entered into possession of said property under said lease. Plaintiff was unsuccessful in his effort to produce oil on the property, having drilled thereon a well to the depth of about 1900 feet, without having discovered petroleum. Plaintiff then ceased operations on his own account and entered into an agreement on December 5, 1933, with defendant Hugh Adams, wherein plaintiff, in consideration of the sum of $10,000, assigned his lease to Adams, $1500 of said sum being paid upon the execution of the assignment, the remainder to be paid by Adams in the following manner: Adams to pay to the lessor Lizzie Glide 16 2/3 per cent of the production from said land—that being the royalty due the lessor—and to pay to plaintiff monthly 25 per cent of the remaining 83 1/3 per cent of said production until the entire sum of $8,500 had been paid.

The agreement specifically provided that time was of the essence and the assignment of the lease was conditioned upon the faithful and due performance of all the terms, conditions and covenants of the Glide lease, and upon default by Adams to pay the money at the time and in the manner specified, or in the event of default of Adams to faithfully perform all the terms, covenants and conditions of the Glide lease, Richter, the plaintiff here, was given the right to reenter, and at his option, terminate the interest of Adams and retake possession of the property and oust all parties therefrom.

One of the provisions of the Glide lease, important to this action, was that if oil was found in paying quantities in any well drilled by the lessee, the lessee was obligated to drill an additional well on said land.

Adams entered into possession of the property under said assigned lease, and on the 22d day of April, 1934, was able to commence production of oil. In the meantime he had entered into a partnership agreement with Fred W. Roberts and Bill Christie, and the three operated under the firm name and style of A. R. C. Oil Company.

It is admitted in the answer that during the month of April, 1934, some 1100 barrels of oil were saved, and sold to the Golden Bear Oil Company, Ltd., for which the defendant Adams received some $500. In the month of May the defendants admittedly sold to the same company some 6,680 barrels of oil, and received therefor in excess of $3,000. Defendant was not particularly definite as to the exact production during this period, but stated generally that all oil not reported as sold was used on the premises. Defendants failed to report to plaintiff the sale of oil as required by their agreement, but plaintiff discovered that fact early in May, and requested defendants on several occasions that they pay him the money to which he was entitled. Defendants were evasive, and said they would pay him as soon as they had received their money from the Golden Bear Oil Company, Ltd. The evidence, however, shows that the defendants were being paid promptly for the oil as delivered, a fact not discovered by plaintiff until shortly before this action was filed on June 23, 1934. At no time did the defendants render to plaintiff a statement showing the amounts of oil saved or sold, and made no payment to him as required in the

agreement of purchase, but the moneys received from the sale of the oil were apparently used for the paying of the creditors of the A. R. C. Oil Company.

The complaint sets forth generally the foregoing facts and asks that an accounting be had, and that the interest of the defendant Adams, and all claiming under him, be forfeited; that plaintiff be restored to the possession of the real property, and by a supplemental complaint that an accounting be had, and for general relief. The answer of the defendants, other than the Golden Bear Oil Company, Ltd., admitted practically all of the allegations of the complaint except to deny that these defendants had failed, refused or neglected to pay to plaintiff the moneys due him from the sale of any oil produced on the premises, and alleged that Adams had promptly paid to plaintiff all moneys due him under the terms of said contract for all oil produced, saved and sold from said premises prior to the filing of the complaint, and that defendants had strictly complied with all of the terms and conditions of the lease in all particulars. The Golden Bear Oil Company, Ltd., appeared by separate answer, claiming to be an innocent purchaser for value.

Upon this complaint and the answers the action went to trial. Upon the trial, over the objection of plaintiff, the court allowed the defendants to testify as to certain conversations wherein the plaintiff was alleged to have agreed, for a consideration of $300, to allow the defendants an additional sixty days in which to pay the amount due under the contract. All of this testimony was admitted over the objection of plaintiff, as not within the issues and not specifically pleaded, which objections were, however, overruled.

At the conclusion of the trial, upon the *ex parte* application of the defendants, the trial court permitted defendants to file an amendment to their answer "to conform to the facts proven", wherein it was alleged that the plaintiff had, in consideration of the sum of $300, granted defendant Adams sixty days thereafter within which to make the first instalment payment due under the contract; and further alleged that plaintiff, in violation of said agreement, had refused to accept said money when tendered to him and had immediately filed this action and procured the appointment of a receiver.

The court made certain findings favorable to defendants, but failed to find whether or not the defendants had been excused from drilling a second well within sixty days from the date of the completion of the well here in question, as required in the lease from Mrs. Glide.

■ We do not deem it necessary at this time to consider in detail the alleged insufficiency of the evidence to support the findings, as the action of the trial court in the admission of evidence as to the alleged parol agreement and permitting the defendants to file an amendment to their answer under the guise of conforming to the proof, was prejudicial to the rights of plaintiff and justifies the granting of a new trial.

As we have already pointed out, the only issue presented by the original pleadings was whether or not the defendants had complied specifically with the terms of the written agreement of purchase. The court permitted evidence of a parol agreement to be received and then allowed defendants to file an amendment to conform to that testimony. The rule is clearly expressed in 21 Cal. Jur., page 136, as follows:

"New matter constituting an affirmative or special defense must be specially pleaded in the answer; otherwise, it cannot be relied on. . . . So also matters of confession and avoidance, and equitable defenses generally must be specially pleaded. . . . Among other defenses ordinarily required to be specially pleaded are: . . . matter of prevention, waiver or excuse for nonperformance of a contract; . . .

"Failure to plead a defense is not cured by the introduction without objection of evidence in support of it or by a finding in relation thereto, though the rule seems to be otherwise where there is merely an omission of an essential allegation."

In the case of *Wienke* v. *Smith*, 179 Cal. 220 [176 Pac. 42], the court said:

Waiver is an affirmative defense, and a defendant desiring to take advantage of it must set up in his answer the facts upon which he bases his claim." (Citing cases.)

In *Seebach* v. *Kuhn*, 9 Cal. App. 485 [99 Pac. 723], plaintiff recovered judgment upon a building contract. Defendant appealed, contending that he was not required to pay the plaintiff for the last instalment, due to the fact that the building had been destroyed by earthquake prior to the completion or acceptance of the work. Respondent contended

he was entitled to recover the last instalment upon the theory that he was ready and willing to perform the work before the earthquake occurred but was prevented from doing so by the act of another independent contractor and the architect. The court held that no such issue had been raised in the pleadings, and that plaintiff could not be permitted to allege one cause of action and recover upon proving a different cause of action, and cited many cases in support of that rule. It is obvious, therefore, that a defense of waiver was not before the trial court, and the court committed error in admitting this evidence.

██ Neither can it be charged that the subsequent amendment to conform to the proof cured the error in the admission of this evidence. In the case of *Fournier* v. *Great Atlantic etc. Co.,* 128 Me. 393 [148 Atl. 147, 68 A. L. R. 481], the court said:

"It is urged, however, that this error was cured by the amendment later offered by which allegations of permanent injuries were added to the original declaration. This contention cannot be sustained. The general rule that amendments, not introducing a new cause of action, may be made to conform pleadings with proof at any stage of the trial, is well settled. (*Kelly* v. *Bragg,* 76 Me. 207; *Waiczenko* v. *Oxford Paper Co.,* 106 Me. 108, 110 [75 Atl. 328]; *Charlesworth* v. *American Exp. Co.,* 117 Me. 219, 222 [103 Atl. 358, 359].) But allowable as the introduction of such an amendment may generally be, it cannot cure the error of the prior admission of evidence admissible only under the amended allegations. The common-law rule is that the right to amend pleadings so as to conform them to proof must be exercised prior to the introduction of the proof, if that, when offered, be objected to on the ground of variance between pleadings and proof. (1 Ency. Pl. & Pr. 585; 31 Cyc. 452; *Rogers* v. *Union Stone Co.,* 130 Mass. 581 [39 Am. Rep. 478]; *Beard* v. *Tilgham,* 66 Hun, 12 [20 N. Y. Supp. 736].) Had the plaintiff, after the amendment was allowed, again introduced its proof of the permanency of Mr. Fournier's injuries, the evidence would have been admissible."

The law appears to be well established that an amendment to conform to the proof is not proper where such amendment has the effect of introducing a new cause of action or defense.

578

The general rule in this regard is stated in 49 Corpus Juris, page 493, as follows:

"A commonly recognized limitation upon the propriety of amendments to conform to the proof is that they must not introduce a new cause of action, or substantially change the claim or defense, or the cause of action, or the nature of the action or defense."

The rule in California is stated in sections 469 and 470 of the Code of Civil Procedure. These sections being interpreted as to allow an amendment to conform to the proof only when such amendment does not have the effect of substantially changing the cause of action or defense. (*Hancock* v. *Board of Education,* 140 Cal. 554 [74 Pac. 44]; *Donian* v. *Danielian,* 90 Cal. App. 675 [266 Pac. 817]; *McCully* v. *Gano,* 116 Cal. App. 695 [3 Pac. (2d) 348]; *Lavely* v. *Nonemaker,* 212 Cal. 380 [298 Pac. 976].) In the last case cited, the court, although holding that courts should be liberal in the allowance of amendments in order that pleadings may conform to the proof, said:

" . . . But amendments of pleadings to conform to the proofs should not be allowed when they raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend. (*Rosemead Co.* v. *Shipley Co., supra,* 207 Cal. 414 [278 Pac. 1038]; *Bank of United States* v. *Foreman,* 102 Cal. App. 756 [283 Pac. 874].)"

Likewise, in the case of *Bank of United States* v. *Foreman,* 102 Cal. App. 756 [283 Pac. 874], the court held that amendments to the pleadings at or following the trial, before judgment, should not be allowed over the objection of the adverse party, which raised new issues that were not included in the original proceedings, and cited many cases in support thereof.

We also believe the court erred in failing to find upon the allegation in the supplemental complaint, that according to the terms of the original lease the defendants agreed to commence the drilling of another oil well within sixty days from the date of the completion of the well in question, and that defendants had breached the foregoing condition in that respect. The defendants in their answer admitted that they had not commenced drilling of the second well within the time required, but "denied that said defendant Hugh

Adams had breached said condition for the reason that the lessor named in said lease, who at all times herein mentioned was and still is the owner of said land, consented that said second well need not be drilled". This allegation amounted to an affirmative allegation in the nature of a confession and avoidance on behalf of the defendants and placed upon them the burden of proving the same, and a finding should have been made. (Sec. 1869, Code Civ. Proc.; *Shropshire* v. *Pickwick Stages*, 85 Cal. App. 216 [258 Pac. 1107].)

Other errors are cited, but inasmuch as this cause must be returned for a new trial, no benefit would be conferred by a discussion of these matters.

The judgment is reversed as to all defendants, and the cause remanded for a new trial.

Thompson, J., concurred.