[Civ. No. 11662. First Dist., Div. One. Mar. 4, 1942.]

LAWRENCE M. PRICE, Appellant, v. MASON-McDUFFIE COMPANY (a Corporation), Respondent.

Philip O. Solon and Nathan Kessler for Appellant.

Hagar, Crosby & Crosby for Respondent.

KNIGHT, J.—Plaintiff appeals from a judgment in favor of defendant in an action for damages based on allegations of fraud committed by defendant in constructing a dwelling for plaintiff. The trial court found that defendant had perpetrated a fraud on plaintiff, but held that the action was barred by the statute of limitations. The principal question raised by the appeal, so plaintiff states in his opening brief, is the propriety of an order made by the trial court granting defendant leave to file a second amended answer. However, the determination of that question, as well as the others urged in support of the appeal, requires a consideration of the facts of the case and the trial court's findings thereon.

At the time the transactions here involved took place, plaintiff was a professor of languages in the state university at Berkeley, and the owner of a lot situated on the side of a hill in that city. In June, 1923, he entered into a written contract with the defendant company for the construction of a dwelling on said lot. The plans and specifications therefor were drawn and prepared by C. R. Madison, an employee of defendant; and the house was completed in September, 1923. Eight days afterwards it was destroyed by fire; and in November, 1923, plaintiff entered into a second contract with said company

to build another dwelling on the same lot. The plans and specifications therefor were likewise prepared by Madison. The house was built on the old foundations, and was completed and plaintiff moved into it on March 7, 1924. The contract price was approximately $7,300, which plaintiff paid in full in accordance with the terms of the contract. Soon after plaintiff moved into the house a number of serious structural defects became apparent to him, and the conditions grew steadily worse during the next several years. Broadly stated, the house progressively sagged, cracked, deteriorated and warped, and plaintiff was fully aware of these conditions, and on three or more occasions called upon the defendant company to repair the damage. The ceiling, walls and foundations cracked; several of the doors and windows jammed; the floors warped; the hearth began sinking; the back and sides of the house sagged, and it was feared that the chimney would fall. Within a year or so after moving into the house plaintiff called the company to repair the cracked plaster; and calling attention to the sagging of the walls of the house and the condition of the foundations, asked the company if something should not be done about it. He was informed that the company had built the house in accordance with the plans and specifications, and that the damage was not caused by faulty construction, but was due to the fact that the house was built on the side of a hill. On that first occasion plaintiff paid the company between $50 and $100 for making the repairs. About two years later it became necessary to summon the company again to make other repairs, for which plaintiff paid an additional $250. In 1929 he called on the company again, this time to make extensive repairs to the foundations, for which he paid approximately $200 more; and between 1934 and 1935 more repairs were necessary, for which the company was also paid. Most if not all of the repair work was done under the direction of two company employees named Nagle and Pusey. In 1936 plaintiff left Berkeley on his sabbatical leave, and upon his return in 1937 found the dwelling in a state of collapse; and after waiting a week for the defendant company to send an expert to inspect the premises, plaintiff employed Mr. Wagenet, a licensed architect, to do so and to perform such work as was necessary to prevent the house from slipping down the hill. For the work performed under the direction of Mr. Wagenet plaintiff paid some $1,170. The complaint in the present action was filed on June 11, 1937.

The trial court found that defendant induced plaintiff to enter into the second contract by falsely representing to him (a) that the defendant would construct the house in a workmanlike manner, in accordance with the plans and specifications and with the building laws of California and Berkeley; (b) that Madison was an architect, as an architect is defined under the laws of the State of California; and (c) that the foundations of the first house were good and substantial and could safely be used for the foundation of the second house. But the court further found that it was not true that at any time after the completion of the second house, that is to say, March 7, 1924, plaintiff believed or relied upon representations made by defendant that there were no structural defects in the house or foundations; it further found that defendant knew that said foundations were insufficient to support said dwelling house and fraudulently attempted to conceal said fact from the plaintiff, but that defendant did not conceal the same from plaintiff; that plaintiff had knowledge thereof. It further found "that at all times subsequent to the year 1929 plaintiff knew of the condition of said foundations and that they were not constructed or laid in a workmanlike manner or in accordance with said agreements or said drawings, plans, specifications, ordinances or laws, and that solely by reason thereof the said building had become and was untenantable and dangerous in which to live." The evidence is amply sufficient to support the trial court's finding that the defendant company perpetrated a fraud upon plaintiff in the construction of said house; but it also fully sustains the trial court's second ultimate finding as to plaintiff's knowledge of the structural defects in said house and the foundations upon which it was built. (*Lady Washington C. Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809].) That being so, the trial court's conclusion that the action is barred by the statute of limitations must be upheld.

Plaintiff contends that because of the statements made to him by defendant's employees to the effect that the damage to the house was caused by the fact that the house was constructed on the side of a hill, it cannot be held that he discovered the fraud at any time prior to 1937 when he was informed by Mr. Wagenet that defective foundations were the real cause of the damage. Plaintiff argues, therefore, that the provisions of subdivision 4 of section 338 of the Code of Civil Procedure are controlling, and if so his action was brought

within the time prescribed by law, citing *Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561 [126 Pac. 351, 42 L. R. A. (N.S.) 125]. As said, however, in the Lady Washington case, *supra:* "... as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts"; and clearly this is just such a case. We find nothing in the case cited by plaintiff which can be said to be helpful to him; in fact it appears from the decision therein that the court there was not concerned at all with the question of the statute of limitations.

 Nor are we able to agree with plaintiff's contention that the trial court erred in granting leave to file a second amended answer. The circumstances leading up to the making of the order were these: On February 23, 1938, the attorneys then representing defendant filed an amended answer to the complaint. It contained certain denials of the allegations of fraud, damage, and time of discovery of the fraud, and as affirmative defenses pleaded the statutes of limitation (subd. 1, sec. 337, subd. 4, sec. 338, subd. 1, sec. 339, and sec. 343, Code Civ. Proc.). In August, 1938, defendant's present attorneys were substituted, and the cause came on for trial in October, 1938. Evidence was introduced by plaintiff in support of all of the allegations of his complaint; whereupon he rested his case. Defendant moved for a nonsuit and the motion was denied; whereupon defendant rested its case, without introducing any testimony. The obvious reason therefor was that it relied upon plaintiff's testimony as establishing that the action was barred by the statutes of limitation. The cause was then continued until November 13, 1938, with the understanding that briefs were to be filed, following which the cause was to be ordered submitted for decision. Plaintiff filed his opening brief wherein he argued, among other things, that the denials in the amended answer of some of the allegations of the complaint relating to the issue of fraud were insufficient in form and amounted to admissions of those allegations. The imperfections in said denials consisted chiefly in the fact that certain allegations of the complaint were denied on information only, rather than on information and belief. Thereupon defendant's present attorneys moved for an order granting leave to file a second amended answer containing denials which

admittedly conformed to the rules of pleading. The motion was supported by an affidavit made by defendant's former counsel to the effect that the filing of the answer containing the defective form of denials was due to mistake, inadvertence and excusable neglect. A counter-affidavit was filed by plaintiff's counsel, and a reply affidavit by defendant's present counsel. The motion was granted, and the cause was ordered submitted for decision; whereupon the trial court made its findings of fact and conclusions of law, and rendered judgment in favor of defendant.

In support of his contention that the order permitting defendant to file the second amended answer was erroneous, plaintiff cites several cases including *Richter* v. *Adams,* 19 Cal. App. (2d) 572 [66 Pac. (2d) 226]; but it should be noted that in most of those cases the trial court denied the application to file the amended pleading, and it was held that such refusal did not amount to an abuse of discretion under the circumstances. It would appear, therefore, that there is no set rule governing such matters; that each case depends upon its own peculiar facts, and that the trial court is vested with a broad discretion in determining whether the amendment may or may not be filed. In any event, so far as we are here concerned, the rule of those cases goes no further than to hold that " . . . amendments of pleadings to conform to the proofs should not be allowed when they raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend." (*Richter* v. *Adams, supra,* quoting from *Lavely* v. *Nonemaker,* 212 Cal. 380 [298 Pac. 976].) On the other hand, as stated in California Jurisprudence (vol. 21, p. 183) great liberality should be shown by a trial court at all stages in permitting such amendments as will facilitate the production of all the facts bearing upon the questions involved in the action, where this can be done without working great delay and without jeopardizing the rights of the adverse party, and where the cause of action or the issues involved therein will not be radically changed; and that "amendments which may remove a possible ambiguity in a pleading or cure a defect of form should be liberally allowed." [21 Cal. Jur. 185.] In other words, as stated in *Abbott* v. *Limited Mut. Comp. Ins. Co.,* 30 Cal. App. (2d) 157 [85 Pac. (2d) 961], liberality in allowance of an amendment to a pleading is the rule rather than the

exception; and in a case where such amendment can be made in the furtherance of justice without jeopardizing the rights of the adverse party it should be allowed. In *LeCyr* v. *Dow*, 30 Cal. App. (2d) 457 [86 Pac. (2d) 900], the original answer specifically admitted certain allegations of the complaint, and afterwards an amendment was allowed which specifically denied such allegations. The reviewing court sustained the trial court's order allowing the amendment, saying in effect that the whole subject of amendments to pleadings is addressed to the sound discretion of the trial court and that while ordinarily a party will not be permitted on trial to amend by denying a fact admitted in the answer, there is no absolute rule governing the matter, and that when the amendment does not operate to the disadvantage or prejudice of the adverse party the trial court's ruling will not be disturbed. (See also *Wrightson* v. *Dougherty*, 5 Cal. (2d) 257 [54 Pac. (2d) 13].)

Here it appears that the first amended answer purported to deny the allegations of fraud, but the denials were imperfect in form; and the answer set up in due form the affirmative defenses of the statutes of limitation; furthermore the record shows that at the opening of the trial it was the understanding of defendant's counsel and doubtless that of the court that the allegations relating to the issue of fraud had been sufficiently denied, and the cause was tried upon the assumption that fraud was a disputed issue in the case. It also appears that plaintiff's evidence was introduced accordingly; that plaintiff himself was fully examined and cross-examined on all phases of that branch of the case. In short, throughout the trial plaintiff treated the denials as did counsel for defendant, as being legally sufficient to require the production of proof on the issue of fraud. It is apparent, therefore, that plaintiff was not taken at any disadvantage, nor has he suffered any prejudice as the result of the trial court's ruling granting leave to file said second amended answer.

Further contention is made that defendant wilfully suppressed evidence by failing to call as a witness an employee named Tompkins. But nowhere in the record does it appear that he was in possession of any facts material to the issues in the case. Finally, plaintiff urges that since defendant's motion for nonsuit was denied and thereafter it offered no evidence, plaintiff was entitled to judgment. But in making

this point plaintiff apparently overlooks the fact that in ruling on a motion for nonsuit all testimony introduced by the plaintiff must be taken as true; whereas in deciding the case on the merits, no such rule prevails.

The judgment is affirmed.

Peters, P. J., and Goodell, J., pro tem., concurred.